### FONTENOT v. FONTENOT.
### No. 1158.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

Atlee P. Steckler, of Ville Platte, for appellant.

Dubuisson & Dubuisson, of Opelousas, for appellee.

MOUTON, Judge.

Defendant's father was very ill at Ville Platte, had to take some medicine for his illness, which required an analysis in New Orleans before it was administered to him. Mr. Jos. Hardy agreed to take the medicine to New Orleans for the purpose above stated. Plaintiff, at the request of defendant, agreed to drive Mr. Hardy in defendant's car to Opelousas to board an early train for New Orleans that he might get an early analysis and return of the medicine. On the way to Opelousas, an automobile accident occurred at the end of the Ville Platte-Opelousas highway, which resulted in injuries to plaintiff for which he is claiming damages for $1,300 in this suit.

The demand was dismissed.

Plaintiff appeals.

### Rule.

The district court issued an order permitting plaintiff to proceed as a pauper. The defendant filed a rule to rescind that order. The evidence shows that plaintiff had no regular employment and none in sight when he filed his suit, and nothing indicates that he had any property.

A bill of $75 was sent to him by Dr. Ardoin, who had given him medical attention after he was injured in the automobile accident, the basis of the demand herein.

This bill, he says, appeared "big to him," and this statement, we have no doubt, was not an exaggeration on his part. We are satisfied from the evidence that plaintiff was too poor to advance the necessary costs to carry on his suit and could not furnish bond for their payment. As such was the situation, he was properly allowed to proceed as a pauper under the provisions of Act No. 156 of 1912, p. 223, as amended by Act No. 260 of 1918, p. 481.

The rule was correctly dismissed.

### Merits.

The accident happened about 1 o'clock in the morning of May 25, 1932.

Plaintiff alleges in his original petition, and reiterates the allegations in his amended petition, that, when he reached the end of the Ville Platte-Opelousas paved highway, and was in the act of preparing to make the curve with the highway, the accelerator was stuck or caught in such a manner that he could not regulate the speed of the auto of which he lost control, and the result was that he could not turn it with the curve in the highway, although he was traveling at a moderate rate of speed, and, on account of his inability to make the turn, the auto ran off the highway into a large ditch or canal and fell on its side, from which he suffered the damages he is claiming herein.

It is clear from the foregoing allegations that the cause of the accident was due to the alleged fact that the accelerator was caught and stuck in such a way that plaintiff lost management of his car, which got beyond his control and was turned over in the ditch or canal along the highway. It is shown that the auto when heated and going over 30 or 35 miles an hour, the accelerator would at times get stuck or caught; and it is admitted by defendant that, when he turned the auto over to plaintiff for the projected trip to Opelousas, he did not apprise plaintiff of this defect in the accelerator. The cause of the accident, defendant alleges, was due to the excessive speed at which plaintiff was driving when he reached the curve and to his unfamiliarity with the roadway.

In the alternative, defendant pleads if it be shown that the accelerator was stuck when plaintiff was making the curve, which defendant denies, and that he was negligent in not informing plaintiff that the accelerator might stick, then defendant pleads contributory negligence on the part of plaintiff. The plea of contributory negligence shows that defendant does not deny his liability for damages if the accident was caused by the catching or sticking of the accelerator, as is alleged by plaintiff.

It was incumbent on plaintiff to show that, as alleged by him, the cause of the accident was due to the fact that the accelerator stuck or was caught, which defendant denies. The solution of this question, one of fact, is the sole issue in this case.

After the accident, plaintiff was taken to the sanitarium at Ville Platte. He was unconscious immediately after the accident and says on his way to the sanitarium he realized he had been in a wreck but knew what he was saying. He says that after that night he was never out of his mind. He testifies that the day following the accident, and the second day, being sick, he did not talk about the accident, but that two or three days thereafter he explained how the accident happened to "everybody who came in" and "told them about the accelerator sticking." Further on in his testimony, he says that was the "thing that made an impression on him," as it was the cause of the accident, and that he had so stated to "lots of people" from the beginning. No witness was, however, produced by plaintiff to show he had made such a statement except a considerable time after the accident between July 21 and 27, when he told his attorney that the accelerator had stuck and that it was the cause of the accident. It is shown by the testimony of plaintiff that on his first visit to his attorney he did not tell him any-

thing about the accelerator. He says, after he had spoken to his attorney about the wreck, he was advised by his attorney to find out "what was the matter"; that he then called on Vidrine, who told him the "accelerator had been stuck." This Mr. Vidrine, he says, had brought the car back, and, after consulting with him, he found out there was something wrong with it and transmitted the knowledge of this fact to his attorney.

The record shows that on the 31st of May, 1932, about six days after the accident, Mr. Clay, in company with Mr. Ellis Dupre, interviewed plaintiff at his home in reference to the accident. Mr. Clay is the adjuster for the Travelers' Insurance Company, and in the interview took a written statement about the accident. He says that plaintiff did not say anything about the accelerator sticking when he took that statement.

Mr. Dupre, who was present at the time, also says that no reference was made by plaintiff about the accelerator catching or sticking when the accident occurred.

Plaintiff says he did not tell Mr. Clay, the adjuster, that the accelerator had stuck, but says he told him to come back, he had "something to tell him."

In the written statement of the plaintiff, voluntarily given and signed by him after it was read by Mr. Clay, as to which there is no contradiction, plaintiff makes no reference to the fact that the accelerator was stuck or caught at the time of the accident. In that statement, he says, the lights and brakes on the auto were good, that he had not traveled over this new pavement to Opelousas, was going about 30 miles an hour, and suddenly came upon a sharp angle turn, and was about in the curve when he realized the danger, that he applied his brakes, turned his wheel to the right, and, when he did that, "the rear part of my car swerved into the left side of the road and the car turned over. Just as we were reaching the curve Mr. Hardy yelled 'watch out' but it was too late."

In his testimony plaintiff said, as above referred to, that the sticking of the accelerator was the "thing that impressed him" the most. There can be no doubt that it would so have impressed him, if in reality it had caught or stuck. It is indeed rather strange, and hard to explain, if this catching of the accelerator had caused the accident, as it is now claimed by plaintiff, that he should have forgotten to refer to that fact when he dictated his statement, which he thereafter signed after it had been read to him. It must also be noted that, according to plaintiff, three or four days after the accident, he told "everybody" that the accelerator had stuck and that it had caused the accident. This statement, if made, was before he had given his written statement to Mr. Clay on May 31, 1932. It is rather singular, it must be observed, that he should have failed entirely to refer to the sticking of the accelerator in his written statement or at the interview he had with Mr. Clay, although he said in his testimony at the trial of the case that the catching or sticking of the accelerator had impressed him above everything else at the time of the accident.

Another surprising circumstance is, according to plaintiff's own testimony, that, when he had his first consultation about his case with his attorney, about July 21, 1932, then again he made no allusion to the sticking of the accelerator, which he mentioned to his lawyer only after he ascertained from Mr. Vidrine, who had driven the car back from the wreck, that the accelerator had caught or stuck on the way.

Counsel for plaintiff says that plaintiff was in bed when he had the interview and gave his statement about the occurrence; that he was suffering intensely and had been taking opiates to relieve his pains.

Messrs. Clay and Dupre both testify that he appeared to be entirely normal and rational when he made his statement, and Dr. Ardoin, who was attending him, says plaintiff was normal and rational all the time.

The very statement itself to which we have referred shows that he gave a very clear narrative of what he said had occurred, and in which he referred with particularity to what had been the cause of the accident. It is impossible to believe he could have given such an orderly account of what happened, and at the same time that he would have forgotten that this accelerator had stuck and caused the auto to plunge in the adjoining ditch or canal.

It will be noted also that plaintiff said in his testimony that he had not mentioned anything about the accelerator during his interview with Mr. Clay. He said further that he had asked Mr. Clay to come back, as he had something to tell him. The fact that he remembered that he had not spoken about the accelerator shows that he was conscious, and his request to Mr. Clay to return for something else he had to tell indicates that his mind was rather active and alert. The fact is that plaintiff in his testimony says, after realizing on his way to the sanitarium that he had been in a wreck, he recovered his consciousness, and that thereafter he was never out of his mind. This testimony, taken in connection with the testimony of Messrs. Clay and Dupre, of Dr. Ardoin, who testifies that he was always normal and rational, and the clear version given of the accident by plaintiff in his written statement, leaves no doubt in our minds that his mind was not at all affected by suffering or any other cause, when he dictated the statement which was written out by Mr. Clay.

The testimony given by plaintiff as a witness in the case is that he saw the sharp

curve in the road ahead of him at a distance of about 150 yards or 450 feet; that, the accelerator being stuck or caught, he lost control of his car, and which unavoidably turned over in the ditch or canal on the side of the highway. He says when he saw the curve he prepared to stop the machine, took his foot off the accelerator, which did not come up, that the machine did not stop, and the turning over followed. His efforts to stop the machine, it will be observed, if we are to believe his testimony, occurred when he saw this sharp curve when about 150 yards therefrom.

In his written statement of the accident, he gives an account of what happened at that time as follows: "I did not expect this sharp turn and was about in the curve when I realized the danger; I applied my brakes and turned my wheel to the right and when I did that the rear part of my car swerved into the left side of the road and the car turned over. Just as we were reaching the curve Mr. Hardy yelled 'watch out' but it was too late."

Mr. Hardy, his companion in the car and a witness for plaintiff, was asked as to what occurred just before they reached the intersection. He answered that question as follows: "Well just before we got to the curve, at least when we got to the curve, I saw that our car was going too fast and I said 'look out' but it was too late the car turned over." Nowhere in his testimony does Mr. Hardy say that the accelerator was caught or had stuck. His statement was that the driver of the car had wrecked it, but without any allusion whatsoever that it was due to any sticking or catching of the accelerator, and upon which no question was propounded to him by counsel for plaintiff.

Mr. Hargroder, who has a filling station at the intersection of the Ville Platte-Opelousas Highway where the accident happened, says that since the road was opened there had been eleven accidents in that curve.

No doubt this curve is very sharp and treacherous. The testimony of Mr. Hardy indicates that plaintiff as he got into the curve was traveling fast, and we think, due to his unfamiliarity with the roadway, he got into the curve before seeing it, and that, when he realized the danger, as was stated by him in his written statement, he swerved to his right and turned over, and that the "yell" from Mr. Hardy was too late to save him.

As we read the evidence, even if the accident was not due to what we have above stated, plaintiff, we find, has failed to prove that the accident was caused by the catching or sticking of the accelerator, as was alleged by him and which he had to establish with legal certainty to allow him to recover the damages claimed. No doubt, the lower court reached that conclusion and dismissed the suit.

Judgment affirmed.